UNITED STATES of America,
Plaintiff-Appellee,

v.

Lewis JACKSON, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Willie BRAZIER, Jr., Defendant-
Appellant.

Nos. 25272, 25273.

United States Court of Appeals,
Ninth Circuit.

Aug. 5, 1970.

Rehearing Denied Aug. 27, 1970.

Lewis Gutérson (argued), Sullivan, Guterson, Rindal & Rousso, Charles H. W. Talbot, Talbot, Smith & Stone, Seattle, Wash., for defendants-appellants.

Jerald E. Olson (argued), Asst. U. S. Atty., Stan Pitkin, U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before HAMLEY, HAMLIN and KILKENNY, Circuit Judges.

HAMLIN, Circuit Judge.

Appellants Lewis Jackson and Willie Brazier, Jr., were charged in an indictment in the Western District of Washington with two counts of violations of 18 U.S.C. §§ 2113(a) and 2113(d) (armed bank robbery). After a jury trial they were convicted on both counts

and sentenced to terms of imprisonment. A timely appeal was made to this court which has jurisdiction under 28 U.S.C. § 1291.

Appellants make only three contentions on appeal: First, that the district court erred in refusing to allow the appellants to be released on bail prior to trial; Second, that the district court erred in refusing to grant appellants' motion for the disqualification of the district court judge; and Third, that the district court erred in not requiring adequate proof of coverage by the Federal Deposit Insurance Corporation on the date of the robbery, an essential element to establish the crime charged.

As to the first contention, the record shows that appellant Jackson was released on $20,000 surety bond on April 8, 1969, and appellant Brazier was released on bond on May 2, 1969. On May 9, 1969, the trial court, upon receiving information from the United States Attorney that threats had been made by appellants to get a bank employee witness, entered an order revoking the bonds. Appellants' motion to revoke the order of May 9 was denied on May 13, and appellants appealed to this court under the provisions of the Bail Reform Act of 1966, 18 U.S.C. § 3147(b). This court entered an order on May 28, 1969, requesting that the trial court consider possible release of appellants during specified hours into the custody of their attorneys or other proper persons, and staying the trial pending determination of this request. The trial court determined that any release under the circumstances was inappropriate, and on June 24 entered an order to that effect and set a new date for trial. Appellants again appealed to this court under 18 U.S.C. § 3147(b), requesting release on bail and stay of the trial. A temporary stay was granted July 18. On October 2, 1969, this court (Judges Hamley, Hamlin and Wright) entered an order denying appellants' motion to revoke the order of May 9 and to reinstate bail pending trial. This court vacated the earlier granted stays of trial and directed the trial court to calendar the case for early

trial. The jury trial commenced October 20, 1969, and on October 23 appellants were found guilty on both counts of the indictment.

■ As to whether the bail revocation violated the Bail Reform Act of 1966 or the Eighth Amendment, we think the question is closed by the decision and order of this court in the instant case dated October 2, 1969, and we do not consider it. Appellants are nevertheless entitled to attempt to show that their continued incarceration prevented their receiving a fair trial. *Cf.* Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951) and Kinney v. Lenon, 425 F.2d 209 (9th Cir. 1970).

Appellant Brazier's defense was a complete alibi. He produced seven witnesses who testified under oath that they saw him in the area of the University of Washington at the time the robbery took place. Appellant Jackson's defense was an explanation of his presence in the area of his arrest. The record shows that the Seattle police were notified while the robbery in question was in progress, and a police patrol car arrived at the bank just as the robbers were commencing their flight. A chase ensued, and the get-away car was finally pursued up a dead end street. The car piled into a hedge at the end of the street, and the suspects in the car leaped out and fled down an embankment into a ravine or drainage creek. Other Seattle officers stationed at the Leschi Harbor Police Station listened to these events over the radio, and upon hearing that the suspects were on foot, left the station and proceeded to the area where the suspects were last seen. As they approached the area they observed appellant Jackson standing beside the road playing with a dog. His clothing, which generally corresponded with the description of a suspect received over the radio, was covered with fresh wet mud and he was perspiring and breathing heavily. He was arrested and later identified in a line-up and at trial by various bank employees as one of the robbers. Appellant Jackson testified that he drove his car to the area of the bank, but it ran

out of gas and he was forced to walk. He met one Larry Tisino on the street and after a brief conversation walked on to a nearby high school looking for one Steve Phillips. Unable to locate Phillips at the high school he set out walking toward the area where Phillips lived. While walking toward this area he saw a small dog, and in the course of chasing the dog slipped and fell and got mud on his clothes. At this point he was observed by the police and arrested. Tisino and Phillips both gave testimony tending to confirm this explanation, and Jackson's roommate, one Lynn Greeley, testified that she recovered his car in the area of the high school and bank later in the afternoon in question and that it was out of gas. Tisino also testified as to his observation of the flight of the robbers from the bank, and stated that neither Jackson nor Brazier was among the men he observed coming out of the bank and getting into the get-away car.

■ Under the circumstances of this case, where the defendants were able to produce numerous witnesses supporting their respective theories of the case, appellants were not denied a fair trial by their incarceration after revocation of bail. *Cf.* United States v. Ballard, 418 F.2d 325 (9th Cir. 1969). Compare Kinney v. Lenon, *supra.* The jury chose not to believe appellants' versions of the facts.

Appellants' second point requires little discussion. Appellants moved to disqualify the trial judge pursuant to 28 U.S.C. § 144. We have reviewed the affidavits filed in this regard, and the arguments of counsel on hearing the motion, and we find them clearly insufficient to demonstrate a personal bias or prejudice on the part of the trial judge toward appellants or members of their class or political group. Compare Berger v. United States, 255 U.S. 22, 41 S. Ct. 230, 65 L.Ed. 481 (1921).

■ The trial judge was informed of the alleged threats to witnesses during his participation in the case because he was presiding over the criminal proceedings lodged against appellants. The fact that the trial judge issued an order revoking appellants' bail bonds is not a disqualifying fact under these circumstances. United States v. Grinnell Corp., 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). Nor is the fact that the trial judge so acted after receiving information from the United States Attorney not made known to appellants in open court.[1] See Willenbring v. United States, 306 F.2d 944 (9th Cir. 1962).

■ We likewise find no merit in appellants' third contention that there was not adequate proof of the fact that the deposits of the bank were insured by the Federal Deposit Insurance Corporation, 18 U.S.C. § 2113(f). The government testimony showed that the robbed bank was the Rainier-Empire Branch in Seattle of the Fidelity Mutual Savings Bank, with main office in Spokane, Washington. The auditor of the bank was called as a witness for the government. A Federal Deposit Insurance Corporation certificate for the Fidelity Mutual Savings Bank was identified by the auditor and offered into evidence by the government. The certificate bears the date January 2, 1968, and on voir dire the court asked the witness, "How long does the certificate run?" and the witness answered, "I believe until the insurance is cancelled." Over defense objection as to the continuing validity of the certificate, the certificate was received into evidence.[2] This testimony, coupled with

1. The record indicates that the trial judge offered to let appellants' counsel review this information *in camera*, but this offer was refused.

2. The certificate reads as follows:
"FEDERAL DEPOSIT INSURANCE CORPORATION
WASHINGTON, D. C.
Hereby certifies that pursuant to the Federal Deposit Insurance Act of the Congress of the United States each depositor is provided maximum deposit insurance of $15,000 in

the evidence of the certificate itself, is adequate to support a jury finding that the deposits of the Rainier-Empire Branch of Fidelity Mutual Savings Bank were insured by the Federal Deposit Insurance Corporation at the time of the robbery. United States v. Safley, 408 F.2d 603 (4th Cir.), cert. denied 395 U.S. 983, 89 S.Ct. 2147, 23 L.Ed.2d 772 (1969); United States v. Ballard, 418 F.2d 325 (9th Cir. 1969); United States v. Phillips, 427 F.2d 1035 (9th Cir. 1970). Cf. 12 U.S.C. § 1818.

Finding no error, the judgment is affirmed.

FIDELITY MUTUAL SAVINGS BANK
SPOKANE
WASHINGTON
In testimony whereof, witness my signature and the seal of the Corporation this 2nd day of January, 1968

/S/
———————————————
Chairman of the Board of
Directors

No. 19776–9 Attest:
/S/
———————————————
Secretary"